UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TODD EDWARD EDMONDS                                              PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:04-CV-P589-C

JOSEPH PAYNE, et al.
                                                               DEFENDANTS

**MEMORANDUM OPINION**

The plaintiff, Todd Edward Edmonds, *pro se*, moves for reconsideration of the order dismissing this prisoner complaint, in which the plaintiff seeks legal and equitable relief, under 42 U.S.C. § 1983, from six metro-county government defendants, in their official and individual capacities, for the alleged deliberate indifference to his serious medical needs.  After screening the complaint pursuant to 28 U.S.C. § 1915A, the court dismissed, without prejudice, portions of the complaint for failure to exhaust available administrative remedies, pursuant to 42 U.S.C. § 1997e, and dismissed, with prejudice, the remaining claims on the merits. Although the court will deny the motion to reconsider, the court will vacate the prior order and enter an order dismissing all claims without prejudice, under the total exhaustion rule of *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005).

I.

**A.  Standard of Review:**

When a prisoner commences a civil action against a government entity, officer, or employee, the district court must review the complaint, before service of

process on the defendants, to identify "cognizable claims" and to dismiss any portion of the complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).

The district court must liberally construe the allegations in a light most favorable to the plaintiff and accept all factual allegations as true. *Prater v. City of Burnside*, 289 F.3d 417, 424 (6th Cir. 2002). The district court better serves "substantial justice" by examining the "thrust, not just the text," of *pro se* litigants' allegations. *Burton v. Jones*, 321 F.3d 569, 573-74 (6th Cir. 2003). Although the court holds *pro se* pleadings to a less stringent standard than formal pleadings drafted by lawyers, the district court is under no duty to conjure up unpled allegations. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *see also Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

**B. Exhaustion of Administrative Remedies:**

When a prisoner challenges the conditions of his confinement under federal law in a civil action for damages, the Prison Litigation Reform Act, 42 U.S.C. § 1997e, first requires the prisoner to exhaust all administrative remedies available. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (Congress afforded corrections officials the opportunity to address complaints internally to improve prison

administration and to facilitate judicial review by creating an administrative record that "clarifies the contours of the controversy.")

Exhaustion of administrative remedies is mandatory: if an inmate fails to exhaust his claim through the prison's grievance process, the court must dismiss the complaint without prejudice, even if the inmate believes exhaustion would be futile. *Booth v. Churner,* 532 U.S. 731, 741 (2001); *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002).  Federal court review is premature if an inmate has completed only the first step of the administrative process and failed to appeal a grievance to the highest institutional authority.  *Booth*, at 731.

If the suit seeks relief from more than one prison official, the inmate must exhaust administrative remedies against each institutional defendant on each claim. *Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003).  Further, "a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describ[ing] with specificity the administrative proceeding and its outcome." *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *see also Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005).

A case involving multiple claims and multiple defendants requires an individualized analysis. *Boyd v. Corrections Corp. of America*, 380 F.3d 989 (6th Cir. 2004).  A grievance statement satisfies the exhaustion requirement if it "gave the prison officials fair notice of the alleged mistreatment or misconduct that forms

3

the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Burton*, 321 F.3d at 575; *Thomas v. Woolum*, 337 F.3d 720 (6th Cir. 2003).

## II.

Before the plaintiff's arrest and detention in the Louisville Jefferson County Metro Department of Corrections, the plaintiff, Todd Edward Edmonds, was under the care and treatment of Dr. Bennett Cecil, who diagnosed the plaintiff with hepatitis C viral ("HCV") infection, a chronic blood disease that without intervention leads to fatal liver disease.[1]

The complaint contains claims against six Metro Corrections defendants: the deputy chief, Joseph Payne; the medical department administrator, Edie Underwood; the medical director, Ann Hall; corrections physician, (unnamed) Stingle; and two corrections nurses, Mary Lu Dewberry and (unnamed) Rambo.

**A.  Summary of Factual Allegations:**

A good deal of the factual allegations in the complaint pertain to the plaintiff's efforts, with the assistance and orders of Jefferson Circuit Judge, Steve Mershon, to secure continuing treatment from Dr. Cecil for the plaintiff while in custody.  It is not clear whether, at the time of the plaintiff's arrest in August 2001, Dr. Cecil's treatment included combination drug therapy – daily oral

---

[1] Dr. Cecil, a board-certified internist and hepatologist, was at one time the director of the Hepatitis C Clinic at the Veterans Administration Hospital in Louisville, Kentucky.  The Court is informed of Dr. Cecil's credentials and the subject of HCV treatment, generally, including combination drug therapy, through unrelated prisoner litigation.  *See Paulley v. Chandler*, 3:99-CV-549(H) (Docket No. 28, Jan. 27, 2000).

4

medication and injections. The plaintiff alleges he repeatedly complained to jail officials that he was not receiving medication for his liver illness, but it is not clear whether the plaintiff simply expected future drug therapy.

According to the complaint, corrections officials frustrated the plaintiff's efforts to receive combination drug therapy. Some of the specific allegations include: on March 1, 2002, the plaintiff's public defender requested, by letter addressed to Deputy Chief Payne, that the plaintiff receive medication for his condition; on May 13, 2002, Administrator Underwood erroneously informed Judge Mershon that the plaintiff does not suffer from HCV; and on May 3, 2004, Medical Director Hall erroneously informed Judge Mershon that the plaintiff was no longer receiving drug therapy under Dr. Cecil's care.

It is clear that by August 2003, the plaintiff secured a court order from Judge Mershon to obtain cost-free medications under Dr. Cecil's care; and within due time, the plaintiff began combination drug therapy, administered by jail medical personnel. The complaint contains allegations that medical personnel failed to properly administer this treatment regimen. These allegations implicate treating physician Dr. Stingle and Nurses Dewberry and Rambo. (The Summary of Grievances section below sets forth more of the specifics of these claims.)

Another claim that bears significantly on the disposition of this action is the plaintiff's allegation that Deputy Chief Payne interfered with the plaintiff's treatment regimen for a two-week period in September 2003. After an inmate

assault, according to the plaintiff, defendant Payne caused the plaintiff's transfer to a facility in another county. The plaintiff was returned to Metro Corrections only after he obtained an order from Judge Mershon on or about October 3, 2003. The plaintiff contends defendant Payne showed deliberate indifference to his serious medical needs by causing this transfer.

**B.  Summary of Grievances:**

The plaintiff filed several grievances in a grievance process that, according to corrections officials, had "problems." (Response By Supervision to Grievance, dated Aug. 16, 2004.) On June 24, 2004, the plaintiff filed his first grievance, which relates the history of the plaintiff's efforts with the cooperation of Judge Mershon to remain under Dr. Cecil's care and treatment.

The June 24th grievance and another grievance filed August 2, 2004, address claims against Nurse Rambo for a missed injection, and on another occasion, for her insistence on using the stomach as the injection site, despite the plaintiff's pain.

The June 24th grievance also asserts a claim against Dr. Stingle for the first, missed injection.

A grievance filed July 7, 2004, addresses claims against Nurse Dewberry for a second, missed injection.

In grievances dated July 6 and July 26, 2004, the plaintiff grieves the broken grievance process, alleging untimely responses that were frustrating grievance appeals in an effort to deny access to the courts. The official response admits

problems with the process and states that it needs improvement.

In yet another grievance dated July 26, 2005, the plaintiff complains that he has missed medication on four days and states:

> This is life saving medication I am repeatedly being denied. Dr. Stingle, Ann Hall, Edie Underwood, several Jane Doe Nurses and the Department of Corrections are responsible for showing deliberate indifference to my serious medical needs and violating several court orders even when Dr. Cecil and Kim Allen [Metro Government Secretary, Cabinet for Public Protection] has repeatedly brought this to their attention. Also this lady (Mary Lou) have (sic) lied about talking to my doctor and about me getting my medication.

In a grievance appeal form, dated August 15, 2005, the plaintiff complains about the broken grievance process and the medical grievances.

This action ensued.

The plaintiff did not grieve the claim against Deputy Chief Payne for the two-week period, in September 2003, during which the plaintiff alleges he did not receive drug therapy because he was transferred from and detained outside Metro Corrections.

**C. Summary of This Court's Prior Orders:**

This court dismissed the following claims on exhaustion grounds: events occurring before June 24, 2004, including claims against Medical Administrator Underwood, because the plaintiff's first grievance addressed incidents occurring on or after June 24; and claims against Deputy Chief Payne, because the grievances do not name him. The court dismissed the remaining claims on the merits, on grounds including failure to allege a constitutional deprivation with the requisite

specificity and failure to state a claim of deliberate indifference to a serious medical need.

In addition, the court denied the plaintiff's motion to supplement the complaint with claims against additional metro-government defendants, Metro Corrections Chief George Detella and Cabinet Secretary Kim Allen, in their individual and official capacities. The plaintiff alleges these defendants are liable for disrupting the his treatment regimen by causing his transfer to the Roederer Correctional Complex, a state institution. The court denied the motion to supplement on the ground that because the plaintiff failed to allege exhaustion of available, administrative remedies, a prerequisite to suit under 42 U.S.C. § 1997e, the supplemental complaint would be futile.

### III.

In the motion to reconsider, the plaintiff complains this court has held him to a higher standard than that reasonably expected of pro se litigants and asserts six grounds for reconsideration.

First, the plaintiff contends the court should have granted leave to supplement the complaint adding two defendants, Chief Detella and Cabinet Secretary Allen, for transferring him to a state institution and ending his treatment under Dr. Cecil. The plaintiff argues denial of the motion to supplement on exhaustion grounds is in error because the Jefferson Metro grievance process was not available to him given his transfer. Although the plaintiff is correct, that an

administrative remedy must be available, under the terms of § 1997e, the court is not in error in denying the plaintiff leave to supplement the complaint with these claims on the basis of *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005). There, the Court of Appeals for the Sixth Circuit adopted a total exhaustion rule: complaints containing both exhausted and unexhausted claims must be dismissed for failure to satisfy the requirement that "no action" shall be brought in federal court until the available, administrative remedies have been exhausted. *See* § 1997e(a). Because the complaint here contains a claim against Deputy Chief Payne that does not appear in the grievances (namely, that a two-week transfer to another county facility interrupted his treatment regimen), the plaintiff's complaint and any supplement to the complaint run afoul of the total exhaustion rule.

Second, the plaintiff argues the court erred in holding that he failed to exhaust his administrative remedies against Deputy Chief Payne. The plaintiff explains that because he was detained in another county facility, he was not able to file a grievance. The plaintiff misses the point, however, that once he had been returned to custody at Metro Corrections, he would have been able to file a grievance against Deputy Chief Payne. The fact that the grievance may have been untimely or otherwise futile does not excuse the plaintiff's failure to file a grievance and provide corrections officials the opportunity to address it internally, before recourse to federal court. Exhaustion of administrative remedies is mandatory: if an inmate fails to exhaust his claim through the prison's grievance process, the court

must dismiss the complaint without prejudice, even if the inmate believes exhaustion would be futile. *Booth v. Churner,* 532 U.S. 731, 741 (2001); *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002).

Third, the plaintiff takes exception to the court's failure to mention the grievance appeal form. Because the court in no way relied on the requirement that a plaintiff pursue his administrative remedies beyond the first step of a grievance procedure, the court's omission of the grievance appeal is of no consequence.

Fourth, the plaintiff laments that his previous cases have been dismissed on exhaustion grounds and complains that the jail blocks inmates from exhausting administrative remedies to hinder their ability to file a complaint in federal court. He cites the grievance in response to which an official admits problems with the grievance process. The plaintiff emphasizes his attempt to grieve the problems with the grievance process. The plaintiff contends he has satisfied the exhaustion requirement. The court is mindful that although the plaintiff has availed himself of the grievance process on many of his claims, he has included in this complaint at least one claim that is not the subject of any grievance. Again, under the *Jones Bey* decision, the complaint runs afoul of the total exhaustion rule.

Fifth, the plaintiff argues that the claim against Administrator Underwood, for misinforming Judge Mershon that the plaintiff did not suffer from liver illness and effectively delaying access to drug therapy until August 2003, should be allowed to proceed. The court dismissed this claim on exhaustion grounds because it arose

before June 24, 2004, the date of the first grievance. Although this grievance addressed the history of obtaining court orders to assure Dr. Cecil's continuing care and treatment, this court reasoned that the plaintiff had failed to connect any of the history allegations to any of the named defendants in this action. The plaintiff disputes this assessment. Even if the court conceded that the plaintiff's grievances placed corrections officials on notice of the nature of the claims asserted against defendant Underwood specifically, the court must dismiss the complaint because, again, the plaintiff has included in this complaint at least one claim that is not the subject of any grievance. The complaint thus runs afoul of the *Jones Bey* total exhaustion rule.

Sixth and finally, the plaintiff argues that the court should not dismiss the claim against the Director of Medical Services, Ann Hall, for interfering with his treatment regimen, in part, by providing false information to Judge Mershon in advance of and during a hearing on May 3, 2004. To give context to this allegation, the plaintiff explains he entered a guilty plea in February 2004, but to accommodate Dr. Cecil's continuing treatment, Judge Mershon postponed the sentencing date until the fall. Judge Mershon advanced the sentencing date, however, to May 3, 2004, because defendant Hall advised the court the plaintiff was no longer receiving treatment from Dr. Cecil. In open court, Judge Mershon called defendant Hall and confirmed her information. Judge Mershon then called the office of Dr. Cecil, who contradicted defendant Hall, and advised the court that

11

the plaintiff had not completed his treatment regimen. In his order, Judge Mershon refers to defendant Hall as being "in error."

In his complaint, the plaintiff alleges he missed an injection on June 24 (and on subsequent occasions) and that his caseworker, Mrs. Peebles, notified defendant Hall of the missed injections. Again, even if the court conceded that the complaint contains sufficient allegations that the defendant Hall displayed deliberate indifference to the plaintiff's serious, medical needs, the court must dismiss this action because the plaintiff joins this claim to at least one unexhausted claim against the defendant, Deputy Chief Payne.

As a final matter, the complaint contains other allegations and claims against other defendants that the court declines to address. Given the ruling of *Jones Bey*, requiring exhaustion of available administrative remedies on all claims in an action, the court must dismiss the complaint, regardless of the merit, if any, of the additional claims.

## IV.

Because the complaint contains both exhausted and unexhausted claims, the court must dismiss the action under the total exhaustion rule of *Jones Bey*. Accordingly, the court will deny the motion to reconsider, but vacate the prior order and enter an order dismissing all claims without prejudice.  With a non-prejudicial dismissal, therefore, the plaintiff may if he so chooses refile a complaint seeking relief for those claims specifically addressed in his grievances.

The court will enter an order consistent with this memorandum opinion.

Signed on  September 16, 2005

*Jennifer B. Coffman*

**Jennifer B. Coffman, Judge**
**United States District Court**

13